Whenever you're ready, Ms. Larkin. Thank you. Good morning. May it please the Court, my name is Robyn Larkin, attorney for Appellant Amie Bruyer in this Social Security Disability Action. Can you speak up a little bit, please? Sure. Thank you. Or move closer to the microphone or move it a little closer to you? Yeah. Thank you. I'll keep track of my own time. I'd like to reserve two minutes for rebuttal. Ms. Bruyer suffers from multiple disabling conditions, but as the ALJ in this case pointed out, Ms. Bruyer's fibromyalgia was the main reason that she could not sustain work. Fibromyalgia caused chronic pain and fatigue for Ms. Bruyer. She attempted several different modalities and attempts to relieve her chronic pain and fatigue. She tried several medications. She had treatment with a rheumatologist. She tried trigger point injections into her muscles and several courses of physical therapy which were all unsuccessful. The ALJ in this case concluded that Ms. Bruyer could sustain work at the sedentary level of exertion. I'd like to narrow the focus today to two simple issues. One is the ALJ's improper rejection of Ms. Bruyer's treating rheumatologist's assessment, that's Dr. Sabahi, and the ALJ's improper rejection of Ms. Bruyer's symptom testimony. Counsel, you can do this in however order you want, but there's one issue in relation to that that I'd like you also to focus on. Let's assume for the sake of argument that we agreed with you that the rejection of the two physicians was improper. The government argues there's plenty in the record that nonetheless could have justified the ALJ's determinations and that we should look to that in deciding this case. So feel free to continue your argument on the two treating physicians, but I'd also like you to keep that in mind and address it at an appropriate time. Sure. So I really want to focus on one treating physician because that alone should direct a finding of disabled and a remand for calculation of benefits in this case. The treating rheumatologist who treated Ms. Bruyer for her fibromyalgia under the agency's own regulations is given special deference in this case. Are you talking about Sabahi? Sabahi, the rheumatologist, correct. So he was the treating specialist for fibromyalgia, and his assessment alone is reason to find her disabled, and the record actually fully supports Dr. Sabahi's findings. So in a case of fibromyalgia, it's chronic pain and chronic fatigue. So the government's response brief did point out normal findings in the record. Those findings don't relate to fibromyalgia. So the findings that are relevant to fibromyalgia are multiple tender points in different muscles in a fibromyalgia patient's body, and reports to a rheumatologist of chronic pain, chronic fatigue, headaches, this constellation of symptoms that's normal in fibromyalgia. So the ALJ's reason to reject Dr. Sabahi's assessment, the ALJ was required to provide specific and legitimate reasons under this court standard, the ALJ said there were no subjective findings, which relates to your question, Judge Bennett, which is that there were all these other normal findings in the record. Those don't relate to fibromyalgia, so that is not a specific and legitimate reason to reject Dr. Sabahi's form. The findings that are relevant to fibromyalgia and to Dr. Sabahi's form are in the record, and that is those multiple- They're all subjective. Some of them are. Some of them are. How do you- What sort of a record would you consider adequate to reject Dr. Sabahi as to a claim of headaches? So Dr. Sabahi was not assessing her headaches, is that- I hope I'm answering your question. If the patient says she has headaches or she has pain in her joints, what would rebut that? I mean, one of the- Other than objective findings that she was grossly normal on examination, and she had intact muscle tone and muscle strength, right? But those are objective findings, and what you're saying is he didn't really- the ALJ didn't find any evidence to rebut the subjective findings, the subjective symptoms, rather. Correct. But how could- other than malingering, and there's no indication of malingering, how could those be rejected? So the ALJ- I mean, our argument is that the ALJ actually ignored the objective findings that Dr. Sabahi did find. So those muscle- when a rheumatologist does a physical examination of a fibromyalgia patient, Dr. Sabahi consistently found those objective, those tenderness points all over her body. And this court has recognized in cases like Revels and Banneke back to 2004- Do you think the finding of the physical examination was grossly normal, does not rule out tenderness? I mean, that's- as far as it relates to fibromyalgia, the only objective findings that are going to be in an examination are those multiple tender points, which Dr. Sabahi did find. Yeah, and consistently at almost every appointment, treatment visit, Dr. Sabahi did find those examination multiple tender points. So in cases like Banneke and Revels, this court has recognized that those tender points on examination combined with the patient's reports of headaches and chronic fatigue, et cetera, those are objective findings. But why would that- let's assume that we found, again, that the ALJ didn't appropriately discount. Why wouldn't we simply remand it for a re-review, including as to whether your client is disabled because of information we can see in the records, such as decreasing some of her medications, exercising regularly, walking frequently without a cane, that the headaches and dizziness were somewhat better with medication and varied in frequency? Why would we simply go against the normal rule of sending it back? Isn't it really rare for us as an appellate panel, even if reversing to award benefits? There is language that it is in a rare circumstance, but Ms. Breer's case meets the credit as true requirements. There's no serious doubt in this case that Ms. Breer is disabled. On Dr. Subahi's form alone, his form is completely supported by the medical records. At every treatment visit, he had consistent findings that are consistent with a person with fibromyalgia. The ALJ did not provide specific and legitimate reasons to reject Dr. Subahi's assessment form. And if on remand at a new hearing, an ALJ would be required to find Ms. Breer disabled based on Dr. Subahi's form. I see I'm almost at my time. If I could reserve the rest of my time for rebuttal. That's fine. Thank you. Your Honors, may it please the Court, Jeffrey McLean on behalf of the Commissioner of Social Security. The ALJ in this case agreed that the appellant had significant physical impairments that restricted her to sedentary work. I'd point the Court to transcript page 30, where the ALJ discussed the fibromyalgia suffered by this individual, as well as the tenderness that supported the limitations ALJ found, including the restriction to sedentary work. The ALJ's analysis of Dr. Subahi and Reinhart's opinions is fairly brief, and there's no acknowledgment of the length of the treating relationships. Do you think that that's a problem, or should we just disregard that? Length of treating relationship is certainly a factor that can be considered, Your Honor, and I don't think there's evidence the ALJ was unaware of the treatment relationship. Wait, wait. So, I'm sorry to interrupt in response to your question. I'm reading what the ALJ wrote. Dr. Subahi's opinion is awarded little weight, as it is not supported by his own limited treatment records and lack of objective findings during his examination. By my count, he saw the claimant more than a dozen times, and to me, more than a dozen times is inconsistent with an ALJ description of limited treatment records. Isn't that a problem? Your point's well taken there, Your Honor. However, I understood the limited treatment records to also go to the issue of what findings were present in those treatment records, and the ALJ continued to discuss the objective findings that were not present and would be expected for an individual who was as limited as Dr. Subahi found. Now, Dr. Subahi assessed significant limitations, such as an ability to sit for only four hours, a need to change positions, a need to lie down. Those kinds of restrictions you'd expect to be revealed by objective findings, such as a reduction in strength, for example, some evidence of deconditioning, muscle wasting, that type of thing. Those findings simply weren't present. Dr. Subahi routinely found grossly normal examinations. That's present, for example, on the examination the day he issued his opinion. That's on transcript 1252, where there was normal strength, normal gait, and no need for a cane. So, in the government's view, the analysis of the ALJ was sufficient to support the rejection of Dr. Subahi's opinion. If that description was problematic, I would say that the other reasons that the ALJ offered were sufficient to support the rejection. So, even if we take limited treatment records as just an error of fact that could suggest the ALJ hadn't reviewed the more than dozen findings, that we should still assume that that was harmless, vis-a-vis the rejection of Dr. Subahi? That would be the argument, Your Honor. And the ALJ's description... Okay, I have another question about Dr. Reinhart. Dr. Reinhart had a specialty in neurology, correct? That's my understanding, Your Honor. And the ALJ didn't mention that in her findings, right? No, Your Honor. Is that relevant? Well, that... Excuse me. Again, while that could be a relevant consideration, the fact that the ALJ hasn't specifically mentioned something doesn't necessarily mean that the ALJ was unaware of a fact. The ALJ had the entire record before them. They reviewed it. They focused on the objective, or lack thereof, findings that were present in the record. If you look at Dr. Reinhart in particular, I'd say that the ALJ gave a fair description of the treatment history that the claimant had with Dr. Reinhart, noting that it was primarily for dizziness, that the dizziness responded well to treatment, was reduced to only one time per week after physical therapy. And the ALJ also noted that the headaches that Dr. Reinhart relied on really boiled down to one episode, or not, excuse me, not one episode, but one treatment note documenting those headaches. So headaches were mentioned at various times earlier in the record, but they were untreated, and they didn't seem to be a significant problem. But the ALJ said the doctor's notes do not reflect consistent reports of headaches, right? Correct. And yet the notes from every visit by Ms. Breyer had a report of headaches, isn't that right? Every visit with Dr. Reinhart? My review of the record did not reveal that, Your Honor. It's possible that I'm mistaken. My understanding of Dr. Reinhart's records were that there was a focus on dizziness, and there weren't complaints recorded in, for example, the narrative portion of the treatment record. Those portions were focused on the dizziness until that note that I was describing where she mentioned having two headaches a week. I'd also point out that at that time, she noticed that those headaches were in part due to weather and stress, things that were transient in nature, and there was not a treatment regimen in place. That was when Dr. Reinhart elected to prescribe medications. And so that was sort of the acute edge, I would say, in the record of these headaches. And I believe the ALJ's decision is supported by substantial evidence when you take it as a whole to note that there was not a consistent report of headaches throughout the record and that they wouldn't go to the four to five absences per month. The claimant herself testified that headaches only caused one or two absences from work. Now, that was prior to the period of issue, but this was an example of the recurrence of those headaches. So I'd say the ALJ's analysis with Dr. Reinhart was supported by substantial evidence and reasonable. So the ALJ makes the statement that there's no evidence to support a finding that Breer is incapable of sitting, standing, and walking within the parameters of sedentary work. But isn't that inconsistent with the ALJ's descriptions of her limited range of motion, spinal tenderness, musculoskeletal conditions, conditions involving her spine and knees? I was, you know, I was confused about that statement. I think the way the ALJ was looking at the record was that those findings supported the restriction to sedentary work, and the ALJ gave credence to those findings and discussed them. However, they didn't support the greater limitations that were described in the symptom testimony or in Dr. Sabahi's opinion. And so when the ALJ is saying that there's no evidence of greater restrictions than sedentary work, I think that goes to the ALJ's reliance of the lack of other kinds of objective findings you'd expect for someone who is so limited. So you wouldn't think to see the normal examination with normal strength and other issues that the ALJ relied on in reaching the decision. I guess one of my concerns here is that I feel like the government's asking us to do a lot of sort of reading between the lines of what the ALJ is trying to say rather than just taking the ALJ's decision here at face value. And there are some things that just, to me, don't seem to add up, and other things that just aren't discussed. Well, Your Honor, the ALJ, I believe, did provide a detailed analysis of the evidence before him. The ALJ also gave credence to the various impairments in the credibility finding. For example, the ALJ discussed the various impairments moving through the record. Fibromyalgia, which is key to this case, was discussed at length. The ALJ noted the medication that was used to treat fibromyalgia and the trigger point tender, the tender trigger points that were also used to treat fibromyalgia. So in my view, the decision stands on its own, and that there aren't a significant number of inferences that the court is required to draw from the decision, sort of beyond the plain language. Counsel, while you still have a little time, I want to shift focus a little bit. The ALJ did not find the Ms. Breuer malingered, right? Correct, Your Honor. And found severe impairment, correct? Correct, Your Honor. So where in the record did the ALJ offer specific, clear, and convincing reasons for rejecting the claimant's subjective testimony, subjective symptom descriptions, and et cetera? So the ALJ's symptom discussion is transcripts 29 and 30. And transcript 30, I think, is the clearest example of the ALJ's analysis of the case. That's where the ALJ summed up the different conditions that were involved. I could read a portion. Go ahead. Go ahead. No, that's fine, Your Honor. I'm running out of time. Well, I mean, but do you believe that the references on page 30, and I think I know what you were likely going to read, that that under our case law constitutes specific, clear, and convincing reasons for rejecting a claimant's subjective testimony? Yes, Your Honor. I'd say the ALJ's decision is pretty clear on the issue of objective medical evidence, the treatment record, various responses to treatment, and with that sum up on transcript 30 describing the various impairments at issue. All right. Thank you. Counsel, you have some rebuttal time left. Thank you, Your Honors. So I'd like to continue on the topic of Ms. Brewer's symptom testimony. Could you close the microphone? Sure. Sorry. I'd like to continue on the topic of Ms. Brewer's symptom testimony, if that's okay. So as to what was just being discussed about the summary of medical records, just a mere summary of medical evidence is not enough under this Court's precedent to reject a claimant's symptom testimony. It's not a specific, clear, and convincing reason. So cases like Lester, Brown, Hunter, those cases make clear that an ALJ must be specific. As Judge Thomas was saying, this Court is not expected to intuit what the ALJ was saying. So the ALJ has to point to specific instances in the medical records that contradict or are inconsistent with specific things within the claimant's symptom testimony. The ALJ failed to do that here. The ALJ's second reason to reject Brewer's symptom testimony was that—and the Commissioner talked about this as well—is that she refused pain management treatments in the form of lumbar spine injections. She did not—lumbar spine was low on her list of things to treat. She was treating several things. She did refuse a knee injection early in the period, but then the ALJ herself acknowledged that Brewer went on to have multiple knee injections after that. She had a knee surgery in February 2018, and she was scheduled to have a total knee replacement two months after the hearing. So there was also a physical therapy issue. Brewer one time refused to do exercises at physical therapy that were increasing her pain. The record then shows that she had multiple courses of physical therapy. So any alleged non-compliance, or the ALJ believed there was some non-compliance, when looked at as a whole, this record does not show that Ms. Brewer was non-compliant with her doctor's recommendations. She tried multiple things to try to treat these several different conditions that she had. The ALJ's only other reason to reject Ms. Brewer's symptom testimony was alleged improvement. So again, this court has said in disability cases like Atmore that ALJs have to look at the record as a whole. So when you look at Ms. Brewer's record as a whole, there's a period of three years here that we're talking about where she tried multiple things to try to alleviate chronic pain and fatigue from her multiple conditions. Relying on one instance of one pain management treatment or not wanting one knee injection is not enough when you take the record as a whole. So again, Ms. Brewer has met the credit as true standard. The record has been fully developed in this case. The ALJ has failed to provide legally sufficient reasons to reject Dr. Sabahi's form and Ms. Brewer's symptom testimony. And if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. Thank you. Thank you. We thank both counsel for their arguments and the case just argued will be submitted.
judges: BEA, BENNETT, THOMAS